IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION No. 07-3453 |
| | : | |
| v. | : | |
| | : | |
| ANDRE KEYES | : | CRIMINAL ACTION No. 03-487-03 |

**MEMORANDUM**

**Padova, J.** **July 11, 2008**

Before the Court is Andre Keyes's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Motion is denied.

## I. BACKGROUND

The Superseding Indictment in this case charged Keyes and twelve co-defendants with conspiring to distribute in excess of 50 grams, that is, approximately 30 kilograms, of cocaine base in Reading, Pennsylvania, in violation 21 U.S.C. § 846 (Count 1). The Superseding Indictment further charged Keyes with three counts of possession with intent to distribute in excess of five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2 (Counts 2, 10 and 19); three counts of possessing with intent to distribute in excess of five grams of cocaine base within 1,000 feet of a public school, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2 (Counts 3, 11 and 20); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2 (Count 4); and employing a juvenile to distribute cocaine base, in violation of 18 U.S.C. § 861(a)(1) and 18 U.S.C. § 2 (Count 18). After a jury trial before the Honorable Franklin Van Antwerpen, Keyes was convicted of all nine Counts.

The case was transferred to the undersigned for sentencing, and on February 22, 2005, we sentenced Keyes to 120 months of incarceration on each of the drug counts to be served

consecutively, and 60 months of imprisonment to be served consecutively on the firearm count, for a total sentence of 180 months imprisonment. Keyes was also sentenced to eight years of supervised release, a $1,000 fine, and a $600 special assessment.

Keyes appealed to the United States Court of Appeals for the Third Circuit, arguing that the evidence at trial was insufficient to prove beyond a reasonable doubt that he was guilty of conspiracy to distribute cocaine base, and that the district court improperly allowed the Government to "reopen" its case and introduce a lab report that had never been shared with defense counsel. The Third Circuit rejected these claims, and affirmed his conviction on January 17, 2007. See United States v. Keyes, 214 Fed. Appx. 145 (3d Cir. 2007). Keyes subsequently filed a petition for writ of certiorari, which the Supreme Court denied on May 14, 2007. Keyes v. United States, 127 S. Ct. 2290 (2007). He filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (the "§ 2255 Motion") on August 20, 2007, and filed a "Supplemental Motion under 18 U.S.C. § 2255" on November 20, 2007.[1]

## II. LEGAL STANDARD

Keyes has moved for relief pursuant to 28 U.S.C. § 2255, which provides as follows:

> A prisoner in custody under sentence of a court established by Act of

---

[1]Keyes has also filed a "Motion for Court to Consider Petitioner's Receipt of Supreme Court's Order Denying Petitioner Writ of Certiorari." The attachments to that Motion indicate that Keyes's counsel mailed the Supreme Court's Order denying certiorari to Keyes on May 17, 2007, and Keyes asks us to consider this fact in assessing the timeliness of his § 2255 Motion. There is, however, no question as to the timeliness of the § 2255 Motion, which was filed on August 20, 2007. We therefore grant the Motion to "consider" the date on which Keyes received the Supreme Court Order, but find that date to have no bearing on the issues before us.

On August 20, 2007, Keyes filed another motion, entitled "Motion and Request for Future Amendment of § 2255," in which he sought leave to amend his § 2255 Motion in the "near future." We have considered Keyes's subsequent filings in this case and therefore grant the Motion "for Future Amendment," but only to the extent that Keyes has already "amended" his § 2255 Motion.

> Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "Section 2255 does not provide habeas petitioners with a panacea for all alleged trial or sentencing errors." United States v. Rishell, Civ. A. Nos. 97-294-1, 01-486, 2002 WL 4638, at *1 (E.D. Pa. Dec. 21, 2001). In order to prevail on a Section 2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962).

## III. DISCUSSION

Keyes asserts two grounds for habeas relief. He first argues that he was denied due process with regard to Counts 10 and 11, because he was convicted of those counts even though the jury found that the Government had not proven that he possessed in excess of five grams of cocaine base. Second, he contends that his counsel, who represented him both at trial and on appeal, was ineffective in failing to argue that the evidence did not support his conviction for Count 4, possession of a firearm in connection with a drug trafficking offense.[2]

---

[2]Keyes's § 2255 Motion and Supplemental Motion also asserted that his trial counsel was ineffective for (1) failing to challenge the sufficiency of evidence introduced to prove the threshold amount of drugs charged in the conspiracy count, and (2) failing to poll the jury as to drug quantity. However, Keyes conceded in his Reply Brief that the evidence identified by the Government in its responsive memorandum was sufficient to prove the threshold amount of drugs charged in the conspiracy count and further conceded that the jury was, in fact, polled as to drug quantity. He therefore withdrew these two grounds for relief.

A. Denial of Due Process

Count 10 of the Superseding Indictment charged that, on April 29, 2003, Keyes possessed with the intent to distribute in excess of five grams, that is approximately 8 grams, of cocaine base. Count 11 of the Superseding Indictment charged Keyes with that same conduct occurring within 1,000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). At trial, the Court charged the jury in relevant part as follows:

> . . . In order to prove a Defendant guilty of the offense of possession of a controlled substance with the intent to distribute it, you must find that the Government has proven the following three elements beyond a reasonable doubt with respect to such a Defendant. First, that the Defendant possessed a controlled substance on or about the dates indicated in the Indictment . . . . And secondly, that the Defendant possessed a controlled substance with the intent to distribute it. And thirdly, that the Defendant acted knowingly or intentionally.
>
> . . . Now in addition, a number of the Defendants are charged with possession of a controlled substance with the intent to distribute that substance within a 1000 feet of a school . . . .
>
> In order to prove the Defendant guilty of this offense the Government must prove the following four elements beyond a reasonable doubt. The first three elements are identical to the elements I just gave you for possession of a controlled substance with the intent to distribute, that is they must prove beyond a reasonable doubt that a Defendant possessed a controlled substance on or about the dates indicated in the Indictment. Secondly, that the Defendant possessed the controlled substance with the intent to distribute it. And thirdly, that the Defendant acted knowingly and intentionally in doing those things. The fourth element that the Government must prove beyond a reasonable doubt is that the possession with the intent to distribute occurred within a 1000 feet of the real property comprising of public or private school . . . . Now as I said, those four elements must be proven beyond a reasonable doubt. . . . If you find a Defendant guilty of a drug offense charged in Count . . . 10 [or] 11 . . . , then you should also answer the question on the verdict sheet which asks . . . whether with regard to Counts . . . 10 [and] 11 . . . , whether or not it was 5 grams or more of crack cocaine. This must be

> proven beyond a reasonable doubt, and just as you must be unanimous in order to find a Defendant guilty of any of these offenses charged, you must also be unanimous in answering those questions.

(N.T. 2/13/04, at 4-333 to 4-339.) In its verdict, the jury found Keyes guilty of both Counts 10 and 11, but answered "no" to the questions of whether each offense involved distribution of 5 grams or more of crack cocaine. (See N.T. 2/14/04, at 5-37.)

Keyes contends that his convictions of Counts 10 and 11 violated his due process rights because the quantities of drugs possessed were elements of the offenses, and the jury did not find those quantities beyond a reasonable doubt. (See Movant's Reply Br. at 3-6 (citing Apprendi v. New Jersey, 530 U.S. 466 (2000); United State v. Vasquez, 271 F.3d 93 (3d Cir. 2003)).[3] A defendant cannot raise in a § 2255 motion a constitutional issue that he could have raised on direct appeal, but did not, unless he shows good cause for, and actual prejudice from, his failure to raise the claim on appeal, or demonstrates that he is "actually innocent" of a crime charged. Massaro v. United States, 538 U.S. 500, 504 (2003); United States v. Jenkins, 333 F.3d 151, 155 (3d Cir. 2003); United States v. Garth, 188 F.3d 99, 106 (3d Cir. 1999). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Massaro, 538 U.S. at 504; see also United States v. Addonizio, 442 U.S. 178, 184 (1979) ("When Congress enacted § 2255 in

---

[3]Keyes did not raise this specific issue in his § 2255 Motion or Supplemental motion, raising it instead for the first time in his reply brief. A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief and is not ordinarily a forum to raise new issues. See United States v. Medeiros, 710 F. Supp. 106, 110 (M.D. Pa.1989) ("It is improper for a party to present a new argument in [a] reply brief."), aff'd 884 F.2d 75 (3d Cir.1989). Nevertheless, in light of the fact that Keyes is proceeding *pro se*, we will consider this newly-raised issue and explain why we find it to be meritless.

1948, it simplified the procedure for making a collateral attack on a final judgment entered in a federal criminal case, but it did not purport to modify the basic distinction between direct review and collateral review. It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.")

Keyes does not attempt to demonstrate that he is "actually innocent" of the crimes charged, arguing only that his conviction was procedurally improper given the jury's findings. See Garth, 188 F.3d at 107 ("[I]n habeas jurisprudence, 'actual innocence means factual innocence, not mere legal insufficiency.'" (quoting Bousley v. United States, 523 U.S. 614, 623 (1998))). He also makes no assertion of good cause in failing to raise his due process claim at trial or on direct appeal. Finally, he has not, and cannot, establish prejudice.

Prejudice means that the alleged error worked to a defendant's "actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Here, there was no error, much less one that worked to Keyes's disadvantage. As set forth above, the Court not only charged the jury regarding the crime of possession with intent to distribute five grams or more of a mixture or substance containing cocaine base in violation of 21 U.S.C. § 841(b)(1)(iii), but also charged it regarding the lesser included offense of possession with intent to distribute an unspecified quantity of a mixture or substance containing cocaine base under 21 U.S.C. § 841(a)(1). See United States v. Lacy, 446 F.3d 448, 455 (3d Cir. 2006) (stating that possession with intent to distribute an unspecified quantity of cocaine base is a lesser included offense of possession with intent to distribute five grams or more of cocaine base). While the jury did not find that Keyes possessed with the intent to distribute more than five grams of cocaine base, it nevertheless found him guilty of possessing with the intent to distribute an unspecified quantity of cocaine base in violation of 21

U.S.C. § 841(a)(1). Thus, while Keyes correctly points out that the jury did not find the specific quantity of cocaine base he was charged with possessing in the indictment, this fact does not affect his conviction of violating 21 U.S.C. § 841(a)(1), for which drug quantity is not a specific element. See, e.g., Lacy, 446 F.3d at 454 (noting that the elements of the crime set forth in § 841(a)(1) are "(1) knowing or intentional (2) possession (3) with intent to distribute (4) a controlled substance"). Keyes's § 2255 Motion is therefore denied with respect to this ground for relief.

B. Ineffective Assistance of Counsel

Keyes's second habeas claim is that his counsel was ineffective for failing to argue in a motion pursuant to Federal Rule of Criminal Procedure 29 or on direct appeal that the trial evidence did not support his conviction for possession of a firearm in connection with a drug trafficking offense. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Id. at 687. To prove constitutionally inadequate representation, a criminal defendant must demonstrate both that (1) his attorney's performance was deficient, i.e., that the performance was unreasonable under prevailing professional standards, and (2) that he was prejudiced by the attorney's performance. Id. Prejudice is proven if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

As stated above, Keyes contends that his counsel was ineffective in failing to argue in a Rule 29 motion or on direct appeal that the trial evidence was insufficient to establish that he had possessed a firearm in connection with a drug trafficking offense. A reviewing court will overturn a jury verdict based on insufficient evidence "'[o]nly when the record contains no evidence,

regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt . . . .'" United States v. Anderson, 108 F.3d 478, 481 (3d Cir.1997) (citation omitted); United States v. Voight, 89 F.3d 1050, 1080 (3d Cir. 1996) (stating that in considering a Rule 29 motion, the court will uphold the jury verdict so long as "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'") (citation omitted).

In finding on direct appeal that there was sufficient evidence to support Keyes's conviction of conspiracy to distribute crack cocaine, the Third Circuit described certain of the evidence against Keyes as follows.

> The government's theory in this case was that the members of the Tenth Street Gang conspired to maintain control over their area with guns, threatening and using violence, and wearing bullet-proof vests. The evidence showed that Miguel Acevedo-Hernandez and Manuel Perez controlled the drug trafficking in the area of 10th and Franklin Streets and dictated who was permitted to sell in that area.
>
> We find that a trier of fact could have concluded beyond a reasonable doubt that Keyes was a part of [the] conspiracy because he was a seller for the drug network of distributor Acevedo-Hernandez. For example, Andrew Cruz testified that in approximately November 2002, he began delivering crack for Miguel Acevedo-Hernandez in the vicinity of 10th and Franklin Streets. Keyes App. IV 934-38. He further testified that he delivered crack from Miguel Acevedo-Hernandez to Keyes at 280 South 9th Street on two separate occasions. Keyes App. IV 936-37. Miguel Acevedo-Hernandez admitted supplying Cruz with drugs which Cruz distributed to sellers in the area, including Keyes. Keyes App. V 1040-42. He also stated that the drug business was limited to certain approved dealers and that if someone else tried to sell in the neighborhood, "they would have problems." Keyes App. V 1053. Among the people permitted to sell in the area were Keyes, Goodrich, Mustafa Sheriff, and Castillo-Bienviedo. Keyes App. V 1055.
>
> In addition, on two occasions, Reading police discovered Keyes wearing a bulletproof vest in houses where drug deals occurred. Officer Edwin Santiago testified that on February 18, 2003, he found

> Keyes sitting next to a firearm at 280 South 9th Street, where police discovered crack cocaine. Keyes App. I 101-07. Officer Jose Colon confirmed Officer Santiago's testimony, and reported that Keyes was wearing a bulletproof vest at the time of the search. Keyes App. I 130-31. Officer Edward Heim testified that on April 29, 2003, he and other officers served a search warrant at the first floor apartment of 37 South 9th Street. Inside the apartment the officers found Keyes, Goodrich, Wilfredo Ortiz, Lydia Carrera-Aponte, and a juvenile. Keyes App. II 385. The police recovered 73 packets of crack cocaine, three bulletproof vests, and $340 from the room. Once again, Keyes was wearing a bulletproof vest. Keyes App. II 390.

2007 Fed. Appx. 145, *3-4.

In addition, the Government offered the following evidence against at trial. Officer Jose Colon, who supervised the search of 260 South 9th Street, testified that when he entered the premises, there were approximately ten people inside, including Keyes. (N.T. 2/10/04, at 1-69, 1-77.) The first floor was "completely open . . . like a studio," with no divisions between the kitchen and the living room. (Id. at 1-70.) In the search, police seized 23.98 grams of cocaine from various locations on the first floor, including some in plain view on the living room floor and some secreted in the living room's drop ceiling. (Id. at 1-70 to 1-76; id. at 1-76 (eight bags of suspected cocaine were "just laying on the floor, throughout the floor there -- the carpet . . . .").) They also seized a Browning shotgun from under a third floor mattress (id. at 1-77 to 1-78), a Smith and Wesson, model CS9, 9mm, semi-automatic handgun, from under a chair in the living room (id. at 1-78 to 79), and a Hi-Point, model C9, 9mm, semi-automatic handgun, with an obliterated serial number, from under the couch. (Id. at 1-80 to 1-81.) An Intratac, .22 caliber, semi-automatic handgun, with an obliterated serial number, was "laying on the top" of the same couch, "where you sit." (Id. at 1-79 to 1-80.) Officer Edwin Santiago testified that when he entered the house, Keyes was sitting on the sofa "right next to" the Intratac handgun, so that the gun was "within arm's reach." (Id. at 1-47; see

also id. at 1-52 (identifying Intratac pistol as the "gun that Mr. Keyes was sitting next to").) Keyes was also wearing a bulletproof vest. (Id. at 1-77.)

Keyes maintains that there was insufficient evidence to show that he possessed any of the four firearms at issue and that counsel was ineffective for failing to argue as such. Constructive possession, which is sufficient to satisfy the possession requirement, requires only that a person "knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992) (quotation omitted). Here, a reasonable jury could certainly conclude, based on the above evidence, that Keyes had the power to exercise dominion and control over the firearms at issue, three of which were in the room with him, and one of which was right next to him on the sofa. A reasonable jury could also find that he intended to exercise dominion or control over those weapons given their proximity to him and the fact that he was wearing a bullet proof vest.

Keyes also argues that, even if possession were established, the evidence was insufficient to establish that the possession was in furtherance of a drug trafficking offense. To support a conviction under § 924(c), the Government is required to prove more than the "'mere presence' of a gun." United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004). It must produce evidence demonstrating that "'possession of the firearm advanced or helped forward a drug trafficking crime.'" Id. (quoting United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (additional citations omitted). The Third Circuit explained that the following "nonexclusive factors" are relevant to this determination:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is

> loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

Id. (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414-15 (5th Cir. 2000)).

In the instant case, consideration of these factors and others clearly support the jury's finding that Keyes's possession of the above firearms was "to advance or promote criminal activity." As explained above, the evidence at trial was that Keyes was sitting on a couch at 260 South 9th Street, "next to" a gun, which was in "arm's reach." Moreover, that gun and one other in the house had obliterated serial numbers. There was also evidence that, in the same room in which Keyes was seated, there were bags of crack cocaine scattered on the rug as well as behind the couch and in the drop ceiling. (N.T. 2/10/04, at 1-75 to 1-76.) In addition, Officer Santiago testified that earlier on the day of the search of 260 South 9th Street, he made an undercover purchase of drugs from individuals at the premises. (Id. at 1-44 to 1-46.) Miguel Acevedo-Hernandez also testified that he had delivered crack cocaine to Keyes at 280 South 9th Street, that he had seen Keyes with a gun, and that it was standard practice for Keyes and others to carry guns. (N.T. 2/13/04, at 4-38 to 4-39, 4-52 to 4-53.) Indeed, there was evidence that two of Keyes's co-defendants had pistol whipped an individual who was selling drugs without the approval of the criminal organization of which Keyes was a part. (N.T. 2/12/04, at 3-103 to 3-105.)

Viewing the above evidence in the light most favorable to the Government, we conclude that a rational jury could have found beyond a reasonable doubt that Keyes both possessed a firearm and possessed it in furtherance of a drug trafficking offense.[4] Accordingly, Keyes cannot show that but

---

[4]Keyes complains that there were others in the house who were not charged with possession of a firearm, and asserts that he plainly was not in possession of any firearm, because he was not arrested at the time of the search. However, that others had access to a firearm does not defeat Keyes's own constructive possession, see Garth, 188 F.3d at 113 ("the fact that others also had

for counsel's failure to raise the issue of sufficiency of the evidence as to the firearm charge, his conviction on that charge would not have survived post-trial motions and/or his direct appeal. Consequently, we find that counsel was not ineffective for failing to challenge the evidence in support of Keyes's conviction for Count 4, and Keyes's Motion is denied with respect to this ground for relief.

An appropriate Order follows.

---

access to the black bag is not the basis for finding that [defendant] did not constructively possess the bag"), and Keyes plainly cannot avoid his own conviction by arguing that others should have been charged and convicted of a firearm offense as well. Finally, he cites no authority in support of his apparent premise that an individual must be arrested at the time of his firearm possession in order to be charged with the offense, and we find this argument to have no merit.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION No. 07-3453 |
| | : | |
| v. | : | |
| | : | |
| ANDRE KEYES | : | CRIMINAL ACTION No. 03-487-03 |

**ORDER**

**AND NOW,** this 11th day of July, 2008, upon consideration of Defendant Andre Keyes's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Docket No. 499), Supplemental Habeas Corpus Motion under 28 U.S.C. § 2255 (Docket No. 510), and all attendant and responsive briefing, **IT IS HEREBY ORDERED** that:

1. The above-referenced Motions pursuant to 28 U.S.C. § 2255 are **DENIED** in all respects.
2. The "Motion for Court to Consider Petitioner's Receipt of Supreme Court's Order Denying Petitioner Writ of Certiorari" (Docket No. 502) is **GRANTED**.
3. The Motion and Request for Future Amendment of § 2255 (Docket No. 501) is **GRANTED** insofar as we have considered Keyes's Supplemental Habeas Corpus Motion as well as the arguments in his Reply brief in support of his Habeas Motion.
4. As Keyes has failed to make a substantial showing of the denial of a constitutional right, there is no basis for the issuance of a certificate of appealability.

BY THE COURT:

/s/ John R. Padova, J.
John R. Padova, J.